Disability Appeal. If the ALJ had found that Ms. Despain was limited to sedentary work, due to her advanced age and her unskilled work history, she would have been disabled under the medical vocational guidelines. The ALJ instead found that she was limited to light work with a sit-stand option. Now, Ms. Despain, as the record shows, cannot perform the prolonged standing and walking requirements for light work. And the issue on appeal is whether the ALJ's finding that she can perform light work is supported by substantial evidence on the record as a whole. Of course, we contend that it's not. Ms. Despain suffers from chronic pain in her back, in her knees, and in her feet. That is well documented in the record, based on both medical imaging and clinical examinations. She has a favorable treating doctor opinion. Dr. Crawley, her treating doctor, limited her to standing and walking only three hours in the day. Well, counsel, I thought that that was sort of the primary issue, was the deference given to the treating physician. The treating physician should have been given more weight by the ALJ. But my problem with that is the check-the-box form. Some of the things that you're citing right now, you check the box, and then we don't know really what medical evidence supports it, because there really isn't a narrative that tells us why she can't do these things. Certainly, Your Honor. This court in the Cox v. Barnhart case was presented with a similar argument by the government. And the court said that if all we had was the, at that point it was a letter from a treating doctor, if all we had from that, then yes, that would be a problem, because the letter is conclusory without more explanation. But the court went on to say that that letter is simply one part of the larger medical record that was supplied by both the treating doctors and other doctors who had treated the claimant in the record. And that is consistent, I think, with something that I want to underscore in this case, that the standard of review is substantial evidence on the record as a whole, not just substantial evidence. Substantial evidence on the record as a whole. What this court said in Cox v. Barnhart is consistent with that type of review. So it's not that we just take the treating doctor's checklist and look at it in isolation. It has to be read in light of all of the other medical evidence in the record. Can you point me, though, to something that he said, and you're making the point of the whole record, but something the treating physician said that supports some of the check the boxes. Because my understanding of the record is that there's just not much there. And you have to kind of resort to looking at everything to figure out whether or not she was, you Yes, which is precisely the point. Under substantial evidence on the record as a whole and under this court's decision in Cox. But you don't think that undermines the deference to the treating physician? In other words, the requirement if you defer to the treating physician would seem to be if the treating physician has an opinion that's supported, right? And it doesn't really matter what anyone else said. Maybe you look at it as a whole when you get to substantial evidence, but maybe you don't defer to the treating physician because the treating physician's evidence or support is not really that great. It's not that detailed. Well, in this case, Dr. Crawley is was her primary care physician. And as a standard medical practice, he is going to have access to the record. She was also treated by an orthopedist and who was Dr. Brandt. And she was also treated by Dr. Rowlett, the podiatrist. Dr. Brandt treated her for problems with her knees. Dr. Rowlett problems with her feet. And he no doubt had access to those records. Now, we agree that his office notes are rather sparse. But if you look at that in light of the record as a whole, and the fact that he must have had, he must have reviewed because he talks about on the form, he writes, and it's kind of hard to read his handwriting, but he does refer to the osteoarthritis in her knees and in her feet, which would have come from the medical imaging performed and the clinical evaluations performed by these other doctors. So I think at that point, you know, other than us going in and saying, you've got to be more specific in all of your records and changing his entire way that he practices, I think for these purposes, especially when there is no conflicting evidence in the record that there should be some deference given to Dr. Crawley's opinion. Well, let's suppose we disagree with you. Let's suppose we say, look, the treating physician, we're going to treat his records just like everybody else because he didn't provide enough support. Then it just becomes balancing the two sides of the equation. You've got the treating physician who actually has a long-term relationship with her, etc. But then you have the reviewing physicians on the other side who reviewed the medical records and said, look, this is our opinion of the record, and it's different. And then it's just a matter of balancing. And then isn't it up to the ALJ? They reviewed some of the records. And this is one of the problems with ALJs relying on these agency doctors. First of all, they're employed by the agency who is making the decision. And they examine the medical evidence that's provided to them at the initial and reconsideration stages of the claim. Now, the claim continues on sometimes for a couple of years after that. And those doctors don't have all of the medical evidence. They didn't have, in this case, Dr. Crawley's opinion about what her limitations were. So it's hard to say that that constitutes substantial evidence on the record as a whole to support the ALJ's decision when these agency doctors who never examined Ms. Despain but only reviewed some of her records are sufficient to overcome, in this case, the medical imaging, the clinical evaluations, and the opinion of her treating doctor. Plus, you add to that a 30-year work history with no evidence of a very strong case for disability on her part. And it's very difficult to see, other than those agency doctor opinions, what it is that exactly supports the ALJ's finding that she can perform light work. Correct me if I'm wrong, but wasn't there also evidence in the record of exams in 2013 and 2015 showing full range of motion? In some of the exams, there were full range of motion. But in others, in fact, if you look at Dr. Crawley, found tenderness and abnormal reflexes on his exams. I'm not talking about his. But the others, there was decreased range of motion. There was an abnormal gait. Dr. Rowlett, her podiatrist, noted, repeatedly noted pain and swelling and an aggravation of her tendons. Even the doctors at the Jonesboro Health Clinic, where she went after she lost her insurance, noted positive straight leg grazing. So there is plenty of clinical evidence, although at times, and the question, I think, is again, the medical evidence on the record as a whole, rather than just cherry picking one or two instances here where there was normal range of motion in those doctors' reports. There were several other instances where there was not normal range of motion, is what I'm trying to say in that regard. When did Ms. Dustain first see Dr. Crawley? I think it was in February of 2014. And the record evidence goes through May of 2016. So over about two and a half years on more than a dozen occasions. So given the evidence here that substantiates, the medical evidence that substantiates her conditions, x-rays that showed bone-on-bone arthritis in her right knee, Dr. Crawley, repeated findings by Dr. Rowlett of osteoarthritis, swelling, inflammation, aggravated tendons in her feet. You have an MRI showing a herniated disc in her back in 2015 that was possibly contracting the nerve root along with moderate narrowing of the opening where the nerve exits the spinal cord. So you have all of this medical evidence plus a treating doctor's opinion plus a 30-year work history. And our contention is that... Before you're done, there's an aspect of this case which struck me as unique that I wanted to ask you about. And it's where you started, the essential nature of the light work finding. And the ALJs, and it's referred to as an accommodation. I've not seen that. That's ADA word. It's not a social security word. But the ADA using it, the ADA accommodated by saying the requisite six hours of sit-stand is met if the job gives her unlimited discretion, so to speak, to sit or stand. And the VE opined that with the limitation worded that way, then there was light work available. And you argue in your brief that that's an improper accommodation. And it is, I think, clearly a get-around of the sedentary light work issue. Do you have any authority either in SSA rulings or in the case law that you can't do that ALJ? And that's a great question. And I see my time's up. I wanted to get that because it's the unique aspect of this case for me. Yes. And I can't find any authority on that. That's not saying that it's not out there, but I can't find it. No authority doesn't mean it's not a real issue. But if she has to sit most of the day due to her lower extremity problems, then the ALJ should have found that she's limited to sedentary work, which would make her disabled under the grids. In other words, as I think you picked up on, this sit-stand option can't be a proxy for sedentary work and allow the ALJ to get around the light work requirements. I do this in my job. And the older I get, the more I do it. I have various places in my chambers where I can work. And if I'm mentally or physically tired of where I am, I go somewhere else. And so I understand the reality or the significance, in terms of physical limitations, of an employee having that freedom. So what the ALJ did is, to me, not counterintuitive, but given its significance here, I was just wondering if another case has had occasion or if the SSA has had occasion to consider it. I think in this case, if he finds that she can do light work with a sit-stand option, I think the understanding, or at least the implicit aspect of that finding, is that she can stand for most of the day but occasionally needs to sit. Otherwise, if she has to sit most of the day but occasionally needs to stand, I think that would need to be a finding that she is limited to sedentary work with a sit-stand option. Thank you, Your Honor. Ms. McGehan. May it please the Court. My name is Una McGehan, and I represent the Acting Commissioner, Nancy Berryhill. As the Court has noted, the key issue in this case is whether plaintiff can rely on this conclusory checkbox form that Dr. Crawley completed in May 2016 to prove that she cannot perform light work. I don't think that's the key issue. What I think is the key issue is what I just discussed, but that's all right. My colleagues think you're right. Okay. Thank you, Your Honor. I can respond to your comment as well. I just wanted to follow up on what Professor Wallace was saying with respect to there's enough record evidence to support her claim. In this case, not only was Dr. Crawley's medical source statement a checkbox form, there's a separate reason the ALJ gave little weight to his opinion because Dr. Crawley's treatment notes do not include any of the limitations he included in his checkbox form, which is a separate reason for giving it less weight, which this Court has noted on many occasions. It's interesting to note that on the very day Dr. Crawley completed his checkbox form, he examined Ms. Despain on that day and he did not find any of the limitations he included in his checkbox form. He, in fact, noted on that day a musculoskeletal examination showed she had a normal range of motion. He prescribed some pain medication for her and advised her to use them sparingly. He did not include any gait abnormalities in his clinical findings and he did not include any reference to the limitations. He also makes the point that these reviewing physicians didn't have all the records, so therefore they're entitled to even less weight than they ordinarily would be. What's your response to that? Yes, Your Honor. At the time these reviewing agencies completed their assessment, they didn't have all of the record evidence. However, the ALJ considered all of that evidence. It's worth noting that there's not a lot of medical evidence in this record. The state agency reviewing physicians did consider the physical treatment notes. They considered Dr. Crawley's part of his records up until I believe it was maybe early 2015 or mid-2015 when they completed their assessment. But the ALJ discussed all the record evidence after that and, in fact, gave the plaintiff the benefit of the doubt by finding her to be more limited. The state agency's physicians found she had an RFC for light work. You know what bothers me is that this discussion is all disregarding a main significance here. This ALJ found her disabled. Found her disabled as of May 6, June 30, 2015. That's contrary to 95 percent of the all of this. Sure, you can say the medical records were slight, but they were on or sparse or slim or of short duration. They persuaded the ALJ that she was disabled. All we're talking about is a date. Your Honor, I don't believe the ALJ found plaintiff was disabled in this case. I thought, isn't this the case where the benefits were granted? That might have been the Bagwell case, Your Honor, where there was a previous period of disability. This case was the ALJ found plaintiff could perform light work, and there was no finding of disability in this case. It could be the other case. All right, so this is not SSI benefits, is it? All right, she was precluded. What about SSI benefits? Well, she applied for Title II benefits only. She wasn't eligible for Title XVI benefits. It looks like her application was only for Title II benefits based on her earnings. All right, I think I am confusing two cases this week. Okay, I'm sorry. That's all right, Your Honor. With respect to the state agency reviewing physicians not having all of the evidence available to them, the ALJ did have all of the evidence and considered it. It's worth noting, as you all have recognized, there is not a lot of medical evidence in this record. Although Professor Wallace points to a dozen visits that she sought with Dr. Crawley, half of those occurred prior to the relevant period in this case at a time when she was working for Frito-Lay as a packing machine operator. Those records, including the orthopedist that he's referring to, was prior to the relevant period. That doesn't help her in this instance. And also, for the same reason, the larger medical evidence, he's trying to get around the flaws in Dr. Crawley's reports by saying, well, let's look at the larger medical record. Well, when we look at the larger medical record in this case, there's not enough evidence to support Ms. Despain's claim. We have an MRI which showed mild degenerative changes and a small disc herniation, and Dr. Crawley did refer a plaintiff to a physician who did not pursue it, according to her own testimony. Is there precedent on the treating physician point? So my view, as I was articulating to opposing counsel, is when you have the treating physician, the treating physician needs to support his or her own opinion. There needs to be some notes that support it. His argument is that, no, you can take into account other physicians who may or may not have, the treating physician may have looked at their notes, and that forms the basis for deferring to the treating physician. What's the rule? What's the precedent on that? Does the treating physician have to support their own notes? Yes, Your Honor. The weight that you give to a treating physician's opinion depends on how well supported it is, and in making that determination, you look at to what extent it's supported by the record, to what extent he- The whole record or just- Well, yes, in both his own clinical treatment notes and the record at large. So for example, you would look to Dr. Crawley's treatment notes where he recounted the physical findings and clinical findings, and in this case, those don't support his conclusion, so that's a basis for discounting it. And then beyond his own treatment notes, you look at the treatment notes of other physicians, and in this case, that was what I wanted to, one of the things I wanted to address is that the larger medical record consists of two visits to a podiatrist who did not include any limitation on plaintiff's ability to walk, and physical therapy treatment notes which showed varying degrees of improvement. So those are two reasons, Your Honor, for giving less weight. You can't look to the other record to shore up the treating physician's opinion. You can discount it based on his failure to support his own medical findings, which is what he did in this case. You can't rely on a checkbox form to meet a burden. So- Counsel, in the time that you have left, I'd be interested in any further response you have to the issue that Judge Lelkin raised at the beginning of your argument on the light work versus sedentary sitting standing issue. Yes, Your Honor. That, we dispute the Professor Wallace's characterization of that as being a get around for sedentary work. No, that was mine. Oh, I'm sorry. Sorry, Your Honor. Give you credit for that. We, in this case, this was an account, the ALJ found that plaintiff had severe leg and back pain and accounted for that by including a sit and stand at will option. That does not mean that he secretly meant to find her limited to sedentary work. And we don't think that- Let me just pause. As I understand, and I didn't go back and restudy the SSA guidelines, but I think Dr. Crawley's MSS, at least as to sit stand, was consistent with sedentary work. Well, my notes say it was stand, walk three hours, sit two hours. That's consistent with sedentary work, isn't it? Well, Your Honor, actually, Dr. Crawley didn't even account for a full eight hours in that opinion. And he did not find a sit and stand option. It was the ALJ who found the sit and stand option. The position was that she has, checkbox or however, that she has severe limitations. And I believe this, I would characterize her residual functional capacity using the SSA criteria this way. And his checkboxes equal okay for sedentary work. And that's different than the most cases we have. Generally, the MSS checkbox cases don't have a- can do any work because usually the opinion being sought is can't do any work. So if Dr. Crawley says she's fit to do sedentary work, but has limitations inconsistent with the agency's definition of light work, that's when we get to what I improperly but conveniently call a get around. I mean, it frames a much narrower issue than we usually have. Yes, Your Honor. If you look at Dr. Crawley's checkbox assessment, he actually found plaintiff wouldn't perform any work because he found- Well, we get into frequent breaks and so forth. Yeah, I know that. Right. I'm just talking, focusing on a sit-stand. Well, again, Dr. Crawley didn't find a sit-stand option. He only found that she could do, she could sit, stand, and walk for three hours. Didn't his opinion include a sit-stand limitation, sit-stand walk limitation? No, Your Honor. He didn't even account for a full eight-hour day. Okay. I'll have to go back and look at the record. But in any event, if the only way that Ms. Despain can successfully perform a light work job is with what the ALJ called a sit-stand option, is the VE's opinion really sufficiently sophisticated? Don't you have to talk about, all right, lots of jobs. In theory, the employer says, sure, you can sit, stand, go to the bathroom whenever you want. But don't you have to get into rather significant detail as to whether the option is consistent with her limitation? Your Honor, I think the focus really is on what the ALJ found. And he found light work with a sit-and-stand option. It doesn't have anything to do with the fact that that would somehow kick her back to sedentary work. Because particularly relying on Dr. Crawley's checkbox form, his opinion isn't entitled to any weight on that score. And the sit-and-stand option was only to account for her leg and foot pain. You're finding that she has the RFC to do light work with this and other limitations? Yes, Your Honor, with other postural limitations. But that means that is consistent with light work. It doesn't somehow impact her ability to perform light work. The ALJ is giving her the benefit of the doubt. But then the VE has to find jobs, a significant number of jobs available in the national or local economy. And at that point, some a greater need for translation arises. Well, Your Honor, I believe the hypothetical to the VE did include the sit-and-stand option. And the VE, based on her testimony, testified that Ms. Tesfane could perform those jobs. So I think that was included. With how much detail as to what jobs? What kind of option the jobs that she identified or he identified have? I'm really talking about whether this is a remand for a more detailed record case. No, Your Honor, I don't think this is this type of case. I'm asking why isn't it? Well, because the VE, the ALJ posed the hypothetical to the VE containing the sit-and-stand option. The VE testified, yes, these jobs would allow that. And you have to look at the record as a whole. We've already established that Dr. Crowley's checkbox form, standing alone, isn't entitled to wait. The rest of his clinical records did not include any limitations on her ability to sit and stand. In fact, he found normal range of motion. You look at the larger medical record, it doesn't include any limitations from the dietarist. I think her knee situation, if nothing else, suggests that this is not someone who can be in one position for very long. Well, Your Honor, during the relevant period, she didn't even have that much treatment for her knees. She did have prior treatment for her knees before the relevant period, and she went back to work after treatment with the orthopedist. So when you look at the time period, the medical relevant period is really about a 14-month period we're talking about. She did not have treatment for knee pain during that. She complained about joint pain, but the treatment from the orthopedist was prior to the relevant period in this case. So the record just doesn't support... She has a good work... Yeah. So this is an employee with an excellent work record who worked with significant joint issues... For many years. ...and finally says, I have to quit. The pain's so great, I can't do it any longer, and immediately applies for benefit. Seems to me the short period of time is not very probative in that. Well, Your Honor, when you look at one of the physical therapy treatment notes, her past relevant work required her to stand up for 12 hours a day, and she can't perform that work, and she told the physical therapist, I have no other experience. I have no clerical or office experience. My only place is in manufacturing. So no, she may not have been able to do the 12-hour-a-day standing job, but the ALJ recognized that and found she could do light work, which was at a less exertional level than she had performed. Thank you. If there are no further questions, I'd like to thank you for your time. Further questions? I think we understand the issues, and it's been effectively and thoroughly briefed and argued, and we'll take it under advisement. Does that complete the morning's arguments? It does, Your Honor. I guess we have an afternoon session, and I think it's in this courtroom, so we are in recess until 1.30.